IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN F. BURKE

       Plaintiff,

v.

                                                  No. 11-cv-07718

SPS TECHNOLOGIES, LLC

       Defendant.

## STIPULATION PURSUANT TO FED. R. CIV. P. 15(A)

Pursuant to Fed. R. Civ. P. 15(a), Plaintiff John F. Burke and Defendant SPS Technologies, LLC consent to the filing of Plaintiff's First Amended Complaint in the form attached hereto. Execution of this Stipulation shall not be deemed a waiver of any defenses by Defendant.

Plaintiff will separately file the First Amended Complaint.

| | |
|---|---|
| /S/ Andrew S. Abramson, Esq. | /S/ Rick Grimaldi, Esq. |
| Andrew S. Abramson, Esq. | Rick Grimaldi, Esq. |
| Abramson Employment Law, LLC | Alacoque Hinga Nevitt, Esq. |
| 790 Penllyn Blue Bell Pike | Jackson Lewis LLP |
| Suite 205 | Three Parkway |
| Blue Bell, PA 19422 | 1601 Cherry Street, Suite 1350 |
| | Philadelphia, PA 19102-1317 |
| Attorney for Plaintiff | Attorney for Defendant |

Dated: May 17, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN F. BURKE

       Plaintiff,

v.

                                          No. 11-cv-07718

SPS TECHNOLOGIES, LLC

       Defendant.

## FIRST AMENDED COMPLAINT

Plaintiff John F. Burke files this First Amended Complaint against Defendant SPS Technologies, LLC, and in support thereof avers as follows:

### Jurisdiction and Venue

1. The jurisdiction of this Court is based upon 28 U.S.C. §1331, in that this Court has original jurisdiction over Counts I and II, which are based upon laws of the United States of America, the Age Discrimination in Employment Act, 29 U.S.C. §621, ("ADEA"), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, as amended by the ADA Amendments Act of 2008 ("ADAAA"). This Court has supplemental jurisdiction over Counts III, IV and V, which arise under the common law of the Commonwealth of Pennsylvania, pursuant to 28 U.S.C. §1367.

2. Venue is appropriate in this Court pursuant to 28 U.S.C. §1392(b) in that Defendant has ongoing business operations in this District and a substantial part of the events giving rise to the claim occurred in this District.

3. The amount in controversy exceeds $150,000.00, exclusive of interest and costs.

1

4.      Plaintiff has complied with the applicable administrative remedies by filing a Charge with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2011-02121, and simultaneously filing a Complaint with the Pennsylvania Human Relations Commission ("PHRC"), case no. 201100472.

5.      On December 7, 2011, the EEOC issued a Dismissal and Notice of Suit Rights, permitting Plaintiff to file his claims under the ADEA and ADA in this action.

6.      On May 4, 2012, the PHRC notified Plaintiff that it has been more than one year since Plaintiff filed his complaint with the PHRC, thereby permitting Plaintiff to pursue his PHRA claims in this litigation. In this First Amended Complaint Plaintiff asserts causes of action for age and disability discrimination under the PHRA.

## Parties

7.      Plaintiff John F. Burke ("Burke") is an individual who resides at 466 Ivy Street, Warminster, PA 18974.

8.      Defendant SPS Technologies, LLC ("SPS") is a manufacturer of engineered fasteners, fastening systems, metal components and assemblies for the aerospace, rail, racing, and other industries. SPS is a multi-national company with annual revenue in excess of $1.2 billion. SPS maintains a principal place of business in the Commonwealth of Pennsylvania at 301 Highland Avenue, Jenkintown, PA 19046.

## Factual Background

9.      Plaintiff Burke is a 57 year-old male.

10.     In March 1979, Burke began working for Defendant SPS.

11.     Plaintiff Burke was employed by Defendant SPS for 32 consecutive years until Defendant terminated his employment on April 8, 2011.

2

12. Just prior to the his termination Plaintiff Burke was paid at the rate of $31.75 per hour and had an annual income of approximately $70,720.00, plus a comprehensive benefits package, including health insurance benefits and a retirement pension benefit computed based upon the five highest earning years.

13. Plaintiff Burke was last employed as an Engineer IV-Methods Engineer/Systems Engineer Analyst at Defendant SPS's Jenkintown, PA factory, a position which he held as of 1996.

14. Prior to 1996 Plaintiff Burke was employed as an Engineer III-Tools Engineer and a Machinist.

15. Plaintiff Burke had a history of certain health issues while working for Defendant SPS.

16. In 2009, Plaintiff Burke developed a spinal infection in his back and he was out of work from February 27, 2009 through March 13, 2009, and again from March 31, 2009 to April 27, 2009.

17. As a result of the spinal infection, Plaintiff Burke has a permanent back disability (septic arthritis with secondary infectious myosistis), which caused his treating physician, Dr. Jeffrey H. Perlson, to place Burke under certain restrictions while working, including limiting Burke's workweek to a maximum of 40 hours per week (other Engineers worked more than 40 hours) and avoiding dusty, dirty, oily areas on the work floor.

18. Plaintiff Burke routinely provided medical notes from his treating physician concerning work restrictions, which were repeatedly questioned by Defendant SPS management, including Paul Dolan ("Dolan"), Manager of Nut Manufacturing.

19. Each time Manager Dolan questioned Plaintiff Burke's work restrictions Defendant SPS's Occupational Health Department confirmed the necessity of the restrictions.

20. Despite Plaintiff Burke's work restrictions, on numerous occasions Defendant SPS attempted to transfer Burke's work location to areas where he would be exposed to dust, dirt and oil.

21. In late Spring / early Summer 2010, Plaintiff Burke overheard his supervisor, Tom Dennison ("Dennison") state to another employee, Joseph Applegate, "Anyone who is sick or hurt will be let go."

22. In September 2010, Plaintiff Burke's office was moved to a small area on the shop floor, known to be chemically one of the dirtiest areas in the plant. Plaintiff reminded Supervisor Dennison of his doctors' restrictions to avoid working in "dusty, dirty, oily areas," but was told "You are going."

23. On January 5, 2011, Plaintiff Burke was injured at work when he had to lift a desk drawer and move it to a different location.

24. In the course of moving the drawer Plaintiff Burke developed severe pain in his lower back.

25. Plaintiff Burke was diagnosed as having a lower back strain and subsequently required physical therapy during the workday from Defendant SPS's approved workers' compensation healthcare panel provider.

4

26. As a consequence of Plaintiff Burke's work injury, a Notice of Workers' Compensation Payable was issued to Plaintiff.

27. Plaintiff Burke incurred medical bills relating to treatment and therapy for his work injury and missed time during the workday in order to receive treatment.

28. At all times prior to the work injury Plaintiff Burke had a good work performance history.

30. Five days <u>after</u> Plaintiff Burke's work injury, Plaintiff received a review in which he received a "2+", a lower rating level than Plaintiff had ever received at any time during his career with Defendant SPS.

31. When Supervisor Dennison presented Plaintiff Burke with the review, Dennison advised Plaintiff that he had been advised told to keep Plaintiff's ranking down.

32. When Plaintiff Burke received the review, Plaintiff made it clear that the rating did not accurately reflect his work performance and it was unfair.

33. Shortly after sustaining the workers' compensation injury, on February 4, 2011, Plaintiff Burke was notified that he was "furloughed" from work until at least March 31, 2011.

34. As of February 2011, Defendant SPS employed eleven (11) other Methods Engineers and numerous other Engineers throughout its Jenkintown, PA facility.

35. Burke was the only Engineer who was furloughed during the period February 4 - March 31, 2011.

36. Defendant SPS did not provide Plaintiff Burke with any explanation as why he was chosen for furloughed instead of the many other Engineers who were not.

37. On April 8, 2011, Defendant SPS notified Plaintiff Burke that he was laid off and his position was permanently eliminated.

38. In April 2011, when Defendant SPS announced certain layoffs Defendant stated that the reason was a business downturn.

39. Defendant SPS's financial reports show that as of July 28, 2011, SPS experienced an increase in sales over the past year, and a share price increase of 4 percent over the past year.

40. When Defendant SPS terminated Plaintiff Burke's employment all employees were working overtime and employees continued to work overtime thereafter.

41. Defendant SPS continues to hire employees to work in engineering positions at its Jenkintown facility and currently has several positions posted.

42. As of the time of the layoff until present, Defendant SPS continues to employ many Engineers who do not have a record of disability, never requested an accommodation for a disability and never pursued a workers' compensation claim.

43. As of the time Plaintiff Burke was laid off until present Defendant SPS continues to employ many Engineers who are substantially younger than Plaintiff Burke, many of whom are less experienced than Burke.

44. Defendant SPS did not provide Plaintiff Burke with any explanation as why he was chosen for layoff instead of the many other Engineers who were not laid off.

45. As a consequence of his physical condition Plaintiff Burke is prevented and/or restricted from performing tasks that are of central importance to most people's daily lives including sitting for any length of time, kneeling or bending over, lifting any heavy objects, working more than 40 hours per week and working in any area that is oily or dirty which can cause an infection.

46. As a consequence of his medical history, Plaintiff Burke had a disability and/or a record of disability of which Defendant SPS was fully aware.

47. Any reason proffered by Defendant SPS for the termination of Plaintiff Burke's employment is pretextual. SPS was actually motivated by a practice and pattern of discriminating against employees based upon age, disability and work related injuries.

48. As a consequence of Defendant SPS's unlawful actions, Plaintiff Burks has experienced lost wages, considerable emotional pain and suffering, anxiety, loss of enjoyment of life and financial damages.

49. Defendant SPS's actions were "willful" and outrageous in that its motives and conduct as set forth above were malicious, wanton, reckless and oppressive.

## COUNT I

### VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT

### 29 U. S. C. §621 et. seq.

50. Paragraphs 1 to 49 are incorporated herein by reference, as if set forth in full.

51. In terminating Plaintiff Burke and continuing to employ significantly younger individuals to perform Plaintiff's duties, Defendant SPS has discriminated against Plaintiff based upon his age.

52. Defendant SPS's decision to terminate Plaintiff Burke's employment was arbitrary and capricious, and based upon Defendant's discriminatory animus towards older employees in the workplace.

53. In failing to hire Plaintiff Burke for open positions and instead hiring substantially younger employee with less experience and no service time with Defendant SPS, Defendant further discriminated against Plaintiff based upon his age.

54. Defendant SPS's decision not to hire Plaintiff Burke for open positions for which Defendant hired substantially younger employees was arbitrary and capricious, and based upon Defendant's discriminatory animus towards older employees in the workplace.

55. Defendant SPS's conduct is *per se* unlawful and constitutes unlawful age discrimination in violation of the ADEA.

WHEREFORE, Plaintiff John F. Burke requests that this Court enter judgment in his favor and against Defendant SPS Technologies, LLC, and that this Court award Plaintiff all damages available under the Age Discrimination in Employment Act, including monetary damages exceeding $150,000.00, in the form of all compensation and monetary losses, which Plaintiff has been denied, including back pay, front pay and all other available damages sustained as a result of his unlawful termination; liquidated damages; reasonable attorneys' fees; expert witness fees; costs; pre-judgment interest; and any other relief which the court deems appropriate.

## COUNT II

## VIOLATION OF AMERICANS WITH DISABILITIES ACT, AS AMENDED BY THE ADA AMENDMENTS ACT OF 2008

## 42 U. S. C. § 12101, et. seq.

56. Paragraphs 1 to 55 are incorporated herein as if set forth in full.

57. Plaintiff Burke has a "disability" within the meaning of the ADA in that he has a permanent, long-term physical impairment as defined by the ADA.

58. Plaintiff Burke's impairment prevents and/or restricts him from performing tasks that are of central importance to most people's daily lives including sitting for any length of time, kneeling or bending over, lifting any heavy objects, working more than 40 hours per week and working in any area that is oily or dirty which can cause an infection.

59. Burke is also unable to perform many activities which he performed in the past such as baseball, bowling, dancing, surf fishing and working on cars (other than light maintenance).

60. As a consequence of his disability, Plaintiff Burke requested a reasonable workplace accommodation in the form of limiting Burke's workweek to a maximum of 40 hours per week and avoiding dusty, dirty, oily areas on the work floor.

61. In terminating Plaintiff Burke's employment Defendant SPS retaliated against Burke as a consequence of his continuing request for a reasonable accommodation.

62. Plaintiff Burke also has a "disability" within the meaning of the ADA in that Defendant SPS regarded Plaintiff as having a condition rendering him unable to perform a major life activity that the average person in the general population can perform; or significantly restricts Plaintiff as to the condition, manner or duration under which he could perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

63. Defendant SPS's actions and perceptions demonstrate that it perceived Plaintiff Burke as having a disability.

64. Plaintiff Burke was a qualified individual under the ADA.

65. Plaintiff Burke suffered an adverse employment action.

WHEREFORE, Plaintiff John F. Burke requests that this Court enter judgment in his favor and against Defendant SPS Technologies, LLC, and that this Court award Plaintiff all damages available under the Americans with Disabilities Act, including monetary damages exceeding $150,000.00, interest, compensatory damages, punitive damages, reasonable attorneys' fees, reasonable expert witness fees, interest, costs, and any other relief which the Court deems appropriate.

## COUNT III

### WRONGFUL TERMINATION OF EMPLOYMENT FOR PURSUIT OF WORKERS' COMPENSATION CLAIMS IN VIOLATION OF SHICK v. SHIREY, 716 A.2d 1231 (Pa. 1998)

66. Paragraphs 1 through 65 are incorporated herein as if set forth in full.

67. Defendant SPS intentionally, willfully and without justification terminated Plaintiff Burke's employment because Plaintiff's injuries caused the initiation of a workers' compensation claim.

68. Plaintiff Burke's workers' compensation injury was a substantial factor in Defendant SPS's decision to terminate Plaintiff's employment.

69. Defendant SPS's actions were unlawful in that said actions violate the public policy and the law of the Commonwealth of Pennsylvania.

70. Defendant SPS's actions were undertaken willfully and maliciously with the intention of causing injury to Plaintiff Burke.

WHEREFORE, Plaintiff John F. Burke demands judgment in his favor and against Defendant SPS Technologies, LLC, and that Plaintiff be awarded compensatory damages in an amount in excess of $150,000.00 together with back and front pay, punitive damages, interest, costs and any other relief, which this Court deems appropriate.

## COUNT IV

### VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT – 43 P. S. §955(a), et. seq.

### AGE DISCRIMINATION

71. Paragraphs 1 to 70 are incorporated herein by reference, as if set forth in full.

72. In terminating Plaintiff Burke and continuing to employ significantly younger individuals to perform Plaintiff's duties, Defendant SPS has discriminated against Plaintiff based upon his age.

73. Defendant SPS's decision to terminate Plaintiff Burke's employment was

11

arbitrary and capricious, and based upon Defendant's discriminatory animus towards older employees in the workplace.

74. In failing to hire Plaintiff Burke for open positions and instead hiring substantially younger employee with less experience and no service time with Defendant SPS, Defendant further discriminated against Plaintiff based upon his age.

75. Defendant SPS's decision not to hire Plaintiff Burke for open positions for which Defendant hired substantially younger employees was arbitrary and capricious, and based upon Defendant's discriminatory animus towards older employees in the workplace.

76. Defendant SPS's conduct is *per se* unlawful and constitutes unlawful age discrimination in violation of the PHRA.

WHEREFORE, Plaintiff John F. Burke requests that this Court enter judgment in his favor and against Defendant SPS Technologies, LLC, and that this Court award Plaintiff all damages available under the Pennsylvania Human Relations Act, including monetary damages exceeding $150,000.00, in the form of all compensation and monetary losses, which Plaintiff has been denied, including back pay, front pay compensatory damages; reasonable attorneys' fees; expert witness fees; costs; pre-judgment interest; and any other relief which the court deems appropriate.

## COUNT V

## VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT – 43 P. S. §955(a), et. seq.

## DISABILITY DISCRIMINATION

77.     Paragraphs 1 to 76 are incorporated herein as if set forth in full.

78.     Plaintiff Burke has a "disability" within the meaning of the PHRA in that he has a permanent, long-term physical impairment as defined by the PHRA.

79.     Plaintiff Burke's impairment prevents and/or restricts him from performing tasks that are of central importance to most people's daily lives including sitting for any length of time, kneeling or bending over, lifting any heavy objects, working more than 40 hours per week and working in any area that is oily or dirty which can cause an infection.

80.     Burke is also unable to perform many activities which he performed in the past such as baseball, bowling, dancing, surf fishing and working on cars (other than light maintenance).

81.     As a consequence of his disability, Plaintiff Burke requested a reasonable workplace accommodation in the form of limiting Burke's workweek to a maximum of 40 hours per week and avoiding dusty, dirty, oily areas on the work floor.

82.     In terminating Plaintiff Burke's employment Defendant SPS retaliated against Burke as a consequence of his continuing request for a reasonable accommodation.

83.     Plaintiff Burke also has a "disability" within the meaning of the PHRA in that Defendant SPS regarded Plaintiff as having a condition rendering him unable to

perform a major life activity that the average person in the general population can perform; or significantly restricts Plaintiff as to the condition, manner or duration under which he could perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

      84.      Defendant SPS's actions and perceptions demonstrate that it perceived Plaintiff Burke as having a disability.

      85.      Plaintiff Burke was a qualified individual under the PHRA.

      86.      Plaintiff Burke suffered an adverse employment action.

WHEREFORE, Plaintiff John F. Burke requests that this Court enter judgment in his favor and against Defendant SPS Technologies, LLC, and that this Court award Plaintiff all damages available under the Pennsylvania Human Relations Act, including monetary damages exceeding $150,000.00, in the form of all compensation and monetary losses, which Plaintiff has been denied, including back pay, front pay compensatory damages; reasonable attorneys' fees; expert witness fees; costs; pre-judgment interest; and any other relief which the court deems appropriate.

 

_____
Andrew S. Abramson, Esq.
Abramson Employment Law, LLC
790 Penllyn Blue Bell Pike
Suite 205
Blue Bell, PA 19422
telephone: 267-470-4742

Attorney for Plaintiff John F. Burke

Dated: May _____, 2012